SPAINE v. STINER et al.

(Supreme Court, Appellate Division, First Department.   May 11, 1900.)

1. NEGLIGENCE—QUESTION FOR JURY.
   Where plaintiff sustained injuries by falling into a coal hole in the sidewalk in front of defendant's premises, and defendant's attention had been repeatedly called to the fact that the hole could not be closed, but it had remained in a defective condition for two years prior to the accident, a submission of the issue of defendant's negligence to the jury was proper.

2. SAME—DEFECTIVE SIDEWALK—LEASE OF PREMISES—OWNER'S LIABILITY.
   A property owner could not shield himself from liability for injuries caused by a defective sidewalk in front of his premises by proving a lease to a third party prior to the accident, where the walk was unsafe at the time of the execution of the lease.

3. SAME—BONA FIDES.
   Where defendant, sued for injuries caused by a defective sidewalk in front of his premises, introduced a lease to a third party, executed and acknowledged prior to the accident, and the lessee had never taken possession, but defendant claimed to be acting as the lessee's agent in taking charge of the property, the bona fides of the lease was a question for the jury.

   Van Brunt, P. J., dissents.

Appeal from trial term.

Action by James P. Spaine against Carrie Stiner and another. From a judgment in favor of plaintiff, Carrie Stiner appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Henry W. Bookstaver, for appellant.
William P. Burr, for respondent.

INGRAHAM, J.   The action was brought to recover for an injury which resulted from plaintiff's stepping into a coal hole in the sidewalk in front of the premises owned by the defendants.   The plaintiff, who was a letter carrier, testified that, after delivering letters at the premises No. 412 Lenox avenue, on January 28, 1897, he stepped upon the cover of the coal hole which was situated upon the sidewalk in front of the premises, and that his leg went down into the coal hole. This was about half past 3 o'clock in the afternoon, the sidewalk being covered with snow and ice.   The defendants were the owners of the premises, and this coal hole was used to supply coal to the building, which was an apartment house, rented to various tenants.   This appellant had employed one Granville as janitor to attend to the building, and his wife was called as a witness for the plaintiff.   She testified that her husband had been acting as janitor from the first week in January, 1897; that this appellant called at the building constantly during the time that her husband was janitor, and gave directions as to what should be done in relation to it; that when the witness first went to the building she noticed that they could not close the coal hole, and that immediately after she went to the premises she notified the appellant that the coal hole was in a bad condition, that it could not

be closed, and that it should be seen to, and that the appellant replied that she would send a man to see to it. The witness further testified that she told the appellant that the coal hole was out of repair, and that they could not fasten the covering. One Rank, who rented the store upon the premises, was called as a witness for the defendants. He testified that Granville, the janitor, looked after the cellar, the coal shute, the stairs, and everything else around the house; that he noticed the covering of the coal hole and the fastening of the cover, and complained about it to the wife of the janitor in January, 1897, and before that; that the cover was sound, but that the chain which held the cover down was broken, and had been so ever since he had been a tenant in the premises, and that he had been such a tenant from the 1st of May, 1895; that the witness sometimes tied the chain to the fastening with a string; that the ring with which the chain was fastened to the side of the coal hole had been broken off. Upon this evidence it is quite clear that there was a case for the jury as to the negligence of the defendants in not providing a proper cover and fastening for the coal hole, and it was not error to refuse to dismiss the complaint.

On behalf of the defendants there was introduced in evidence a lease made by the defendants to one Sonneschein, leasing the premises for the term of 10 years from the 1st of September, 1896. This lease was dated on the 1st of September, 1896, and was duly executed and acknowledged on that day. Notwithstanding this lease, the appellant seems to have remained in possession of the premises down to a period subsequent to the happening of the injury, collecting the rents, and giving instructions as to the management of the property. The appellant testified that the tenant, Sonneschein, went into possession under the lease in 1896, but that Sonneschein, being ill, asked the appellant to collect the rents for him, and that she collected such rents, and engaged this janitor for Sonneschein, and made the arrangements under which he took charge of the house. She further testified that she could not tell when she commenced to collect rents for Sonneschein, or how long she continued to collect the rents, but that she called at the house perhaps once a week, and might have called there twice a week; that she called to see the condition of the house, and to collect the rents; that when she collected the rents she deposited them to her own account in the bank; that, if there was any rent in excess of the amount that Sonneschein owed her under the lease, she accounted to him for it, and if there was any deficiency she charged him with it; that when Sonneschein was ill she took possession of the house, and collected the rents. Sonneschein, who was a real-estate broker, testified that he executed this lease, and that he went into possession of the premises under the lease several months after, and collected the rents; that subsequently he asked the appellant to relieve him of the lease, which she did, and that she then resumed possession of the premises; that he did not take possession of the premises immediately after the 1st of September, 1896; that Mrs. Stiner collected the rents for him before he took charge; that after he took charge he collected the rents for about a year, and then returned the property to the appellant again; that he thinks it was about January, 1897, when he took charge of the store, and continued in charge of it for about a year. There was

introduced in evidence a lease made by Sonneschein to Rank of the store of the premises, dated February 21, 1898, leasing the same for the term of three years from the 1st of May, 1896. ˙ This lease was not acknowledged, and the exact date of its execution does not appear. The tenant, however, testified that he paid rent to Sonneschein from the commencement of the new lease, and before that time, had paid rent to the appellant, Mrs. Stiner; that before February, 1898, he did not pay rent to Sonneschein. Upon this testimony the court left it for the jury to say whether or not this lease was a bona fide lease, and whether Sonneschein went into possession under it; the court charging the jury:

"I leave it to the jury to say upon all the testimony in this case whether this was a bona fide lease, made in good faith, and whether Sonneschein actually took possession of the premises. Mrs. Stiner admits, as I say, that she collected rents, and says she collected them for Sonneschein, and was acting as his agent. Of course, if the owners of this property, who are the defendants, made a lease of the entire premises to Sonneschein, and that was a bona fide lease, and then Sonneschein went into possession of the premises, with a covenant on his part to keep the premises in repair, then the defendants are not liable in this case at all. If, on the other hand, the jury should come to the conclusion that this was not a lease made in good faith, and was a subterfuge to protect the defendants, and that the defendants remained not only the owners, as they did, but also continued in possession of the premises, then, if they were negligent, and caused the accident, they are liable. * * * If you find, as I say, that Sonneschein was in possession of the premises under a bona fide lease, it will be your duty to find a verdict for the defendants. If you find that the defendants were still in possession, notwithstanding the lease to Sonneschein, and that the testimony in regard to the information given to Mrs. Stiner about the coal hole being out of order is true, then it will be your duty to find a verdict for the plaintiff."

Counsel for the defendants excepted to the court's submitting the question of the bona fides of this lease to the jury, and also to the instruction that, if the jury should find that the lease was not bona fide, but was contrived to relieve the defendants from liability, they might then find a verdict for the plaintiff, if they found that Mrs. Stiner was guilty of negligence. I think that, taken as a whole, the court correctly left this question to the jury, and that the instructions given were not objectionable. Upon the evidence the jury could have found that, notwithstanding the execution of the lease, the appellant still remained in possession of the premises, collecting the rents, and undertaking to keep the premises in repair. Sonneschein testified that he did not take possession at the time of the execution of the lease, or for some time after, and that he remained in possession for about one year. He further testified that he was in possession after February 28, 1898, and it does not seem to be disputed by the appellant but that she was in possession and collecting the rents at the time of the accident. Whether Sonneschein had ever taken possession under the lease, or was in possession, either actually or through his agent, at the time of the accident, was clearly a question for the jury. The jury were expressly instructed that, if Sonneschein was in possession of the premises under a bona fide lease, it was their duty to find a verdict for the defendants; and we think that instruction, in view of the testimony, was as favorable to the defendants as was justified. The action being for negligence,

the one whose negligence was the cause of the injury was liable; and if the appellant was in the actual possession of the premises. under an obligation to make the necessary repairs, and to keep the premises in a reasonably safe condition, and was negligent in the performance of that obligation, she was liable for any injury sustained by reason of such negligence, and that irrespective of her legal title to the premises. The appellant, being one of the owners of the premises, and having knowledge of the condition of the cover of this coal hole, would be under an obligation to see that it was repaired, and would be liable for an injury sustained in consequence of its being out of repair. To relieve herself from that liability, it was incumbent upon her to show that at the time of the accident she was not in the possession of the premises. But, even assuming that this lease was a valid lease, there being evidence to show that prior to the time that the appellant executed the lease to Sonneschein the cover of this coal hole was out of repair, and in a dangerous condition, she would not be relieved from liability, as she had leased the premises in such a dangerous condition, and, as such, was responsible for any accident that happened because of the condition in which the premises were when she leased them. This coal shute was a part of her building, and was in use for the benefit of the building. Its opening was in a public highway, and, while it may be presumed that she had a right to maintain this coal hole in the sidewalk, she was at least under an obligation to maintain it in such a condition that one could safely use the highway. It would seem that there was evidence to show that this coal hole was in a dangerous condition at the time the appellant acquired the title to the property, and remained in such a condition down to the time of the accident, a period of nearly two years. It was clearly negligence for her to allow this coal hole to remain in that condition, and she cannot shield herself from liability by a statement that she did not know of its condition, as it was her duty to inspect it, and see that it was in such a condition that one using the sidewalk would be protected from injury. So, even assuming that the lease was executed in good faith, and that Sonneschein went into possession under it at the time it was executed, the appellant was not relieved from liability if the jury should find that at the time the lease was executed this coal hole and its cover were unsafe. Assuming, however, that the actual execution and delivery of this lease would have been a good defense in case the tenant actually went into possession of the premises, and assumed the obligation of repairing the coal hole, if it was then out of repair, and maintaining it in a proper condition during the term demised, the circumstances were such that the jury would be justified in finding that up to the time of the accident Sonneschein had never been in actual possession of the premises, and had never assumed the obligation to make the repairs provided for by the lease, but that the appellant still remained in possession, collecting the rents, and applying them to her own use; and upon such a finding I think it was the duty of the appellant to maintain this coal hole in a proper and safe condition, and that for a neglect in the performance of that duty she was liable. Under the

charge of the court the plaintiff was not entitled to a verdict unless the jury found that the appellant was in actual possession of the premises. Upon the whole case I think the instructions given to the jury were as favorable to the defendants as the facts justified, and that the verdict of the jury was sustained by the evidence. There is no question of evidence that requires discussion, and we think that no error was committed that would justify a reversal of the judgment.

The judgment and order should, therefore, be affirmed, with costs.

RUMSEY, J.; concurs.

McLAUGHLIN, J. I concur in the conclusion reached by Mr. Justice INGRAHAM in this case. The owner of real estate abutting upon a street is responsible for the condition of the sidewalk adjacent to and immediately in front of his property, unless he has been relieved from that responsibility by surrendering possession of it to another. The rule is well settled that where one gives another absolute possession of his property he is thereby relieved from all liability by reason of want of repair, provided the one to whom possession is given expressly or impliedly covenants to make the necessary repairs. The reason of the rule is obvious. Where such possession is given, the owner has no more right than a stranger to go upon the premises, and, of course, cannot go there, without consent of the lessee, for any purpose,—even to make repairs. In the present case a question of fact was presented as to whether the owner of the premises in front of which the accident occurred had leased the same to another,—had entirely surrendered possession,—so that she had no right to go upon the premises for the purpose of making repairs. The jury found that she had not made such lease, and there is evidence which is sufficient to sustain that finding. The question presented, therefore, being one of fact, and there being evidence to sustain the finding of the jury, we have no right to interfere with the conclusion reached by it. For these reasons, I think the judgment should be affirmed.

VAN BRUNT, P. J. I dissent. It seems to me that the jury were called upon to pass upon a false issue. There was no evidence whatever tending to show that the lease to Sonneschein was a fraudulent one, or that it was given for any ulterior purpose; and yet this is the issue which was presented to the jury against the objection of the defendant, and they may have reached their verdict through the finding upon this issue, which should never have been submitted to them, as there was no evidence whatever tending to support it.